**William C. BRADT, Plaintiff,**

v.

**STROUT REALTY, INC., a Foreign Corporation, Defendant.**

**Civ. No. 78–71–M.**

United States District Court, D. Montana, Missoula Division.

Nov. 8, 1979.

Recht & Greef, John D. Greef, Hamilton, Mont., for plaintiff.

Garlington, Lohn & Robinson, Lawrence F. Daly, Missoula, Mont., for defendant.

OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

From the agreed facts contained in the pretrial order and the evidence introduced at trial, it appears that E. A. Strout Western Realty Agency, Inc. (Strout) is a California corporation. Although the evidence does not spell it out, it is evident that Strout, the defendant here, is in some manner related to a corporation or corporations which do business in real estate all over America under a title or titles which contain the name "Strout."

The relationship between plaintiff and Strout originated in a written contract which sets out the obligations of the parties. It was prepared by Strout, spells out in detail the obligations of the plaintiff, binds Strout to do some things, such as

furnish forms and permit the use of the name "Strout," but in general is vague as to Strout's obligations. I infer from the evidence that the main value of a Strout relationship, so far as real estate brokers such as plaintiff are concerned, is that it makes them a part of a nationwide system with a respected name, which advertises nationally, and which receives and dispenses information about people over all of America who want to deal in real estate. Strout, whether by its own corporate action or by reason of its nationwide affiliations, is responsible for the participation of the local brokers in the nationwide operation and bears whatever liability may flow from the distribution of catalogs, confidential listings, and referrals in Montana. At least in Montana, Strout operates through locally-licensed real estate brokers, and the actual listing of properties and the negotiation for sale or purchase, as well as the paperwork, is done in Strout's name by the local broker. Commissions are sent to Strout which then remits to the local brokers that percentage of the commission to which they are entitled under the terms of the contract. The contract describes the local brokers as "independent contractors."

The contract between plaintiff and Strout was dated April 8, 1976, and the plaintiff acted as a Strout broker until July 5, 1978. During this period Strout retained $23,513.00, its percentage of commissions collected. In January 1978 plaintiff learned that Strout was not a licensed broker and ceased paying commissions to Strout although he received and used Strout's services until July 5, 1978. In that period he retained $10,156.00, which was Strout's share of the commission. It is conceded that there were no breaches of contract by either party unless Strout's retention of

funds or plaintiff's failure to pay were breaches. Plaintiff sues for the $23,513.00 retained by Strout; Strout counterclaims for the $10,156.00 retained by plaintiff.

The basic question in this case, ignoring the validity of defenses, which in my mind need not be determined, is whether Strout, a corporation, may recover real estate brokerage fees. Under Montana Code Annotated (hereinafter MCA) § 37–51–306 (1978), it is unlawful for a licensed broker to compensate a nonlicensed person for brokerage services, and such payment is a cause for revocation of a broker's license. MCA § 37–51–321(16). MCA § 37–51–401 provides that a person shall not bring an action for broker's commissions unless such person was licensed or "authorized to act as a broker" under the Act. MCA § 37–51–301(1)[1] makes it unlawful to act in the capacity of a broker without a license "or [without] otherwise complying with this chapter." MCA § 37–51–301(2)[2] provides that a corporation may not be licensed, but "may act as a real estate broker" under certain conditions. While the prohibitions of MCA §§ 37–51–306 and 37–51–321(16) extend to all unlicensed persons, it seems to me that the intent of the legislature, as gathered from the entire Real Estate License Act, was that a corporation permitted to act as a broker under MCA § 37–51–301(2) could collect real estate commissions, only those either "unlicensed" or "unauthorized" being forbidden. The question then is: Was Strout in compliance with MCA § 37–51–301(2)?

It is not required that every officer of a corporation be licensed; only those officers who "[perform] the functions of a 'broker'." By way of illustration: The president of a Montana corporation who himself did no real estate business of any kind, but simply

---

1. "It is unlawful for a person to engage in or conduct, directly or indirectly, or to advertise or hold himself out as engaging in or conducting the business or acting in the capacity of a real estate broker or a real estate salesman within this state without a license as a broker or salesman or otherwise complying with this chapter."

2. "Corporations, partnerships, and associations may not be licensed under this chapter. A corporation or a partnership may act as a real estate broker if every corporate officer and every partner performing the functions of a 'broker', as defined in 37–51–102(2), is licensed as a broker. All officers of a corporation or all members of a partnership acting as a broker are in violation of this chapter unless there is full compliance with this subsection."

managed the office and general corporate affairs, would not need to be licensed. As I view it, the purpose of the Montana law is to require that the buying and selling of real estate be handled by persons who are licensed.

None of Strout's officers, as the term "officer" is generally used in connection with corporations, lived in Montana, and none of them came to Montana to participate in actual real estate listings or dealings. Unless, as discussed later, their participation in sending materials into Montana was the act of a broker, they did not act as brokers in Montana.

With but one possible exception, and this exception is possible only under an expanded definition of the word "officer," the evidence does not show that Strout's unlicensed agents or officers participated in the actual dealings in Montana for real estate. The possible exception is this: Aron Claassen was employed as a field representative in Montana by Strout. In his work he sought to procure brokers, and he dealt with them in their relations to Strout. He was not employed to act as a broker, and he did not act as one. In January 1978 Duncan Gilchrist, a licensed broker working for plaintiff, sought to get a listing from a Montana rancher named Watson. Claassen accompanied Gilchrist on a visit to Watson. Watson wanted the broker to take a net listing, i. e., one in which the buyer would pay the real estate commission. Claassen advised Watson as to how to devise such a listing. He did not receive a fee or commission.

There is no indication in the evidence that Strout's actions in Montana have been unprofessional. The public has, through the Strout brokers licensed in Montana, received all of the protection the Montana Real Estate License Act was designed to afford. Some licensed person handled the listings, the negotiations, the passage of money, the person-to-person communications. The act of Claassen was a single, isolated act. Claassen was not hired to sell real estate or take listings. There is no

evidence that Strout knew in advance that Claassen would go beyond his authority. The word "officer" is not defined, but Claassen was not an officer of Strout in the usual sense, and all in all, in my opinion, what Claassen did was not clearly enough the negotiation of a listing to work a total disqualification of Strout under MCA § 37–51–301(2).

Notwithstanding what has been said, the corporate Strout does send information into Montana which enables Montana brokers to find out-of-state buyers for Montana real estate and vice versa. It is the officers of the corporate Strout who create the structure for these exchanges of information, and they are "brokers" if what they do is brokerage under the Montana definition.

MCA § 37–51–102(2), which defines "broker," provides in part:

> "The term 'broker' also includes an individual who engages in the business of . . . contracting for collection of a fee in connection with a contract by which he undertakes primarily to promote the sale, lease, or other disposition of real estate in this state through its listing in a publication issued primarily for this purpose or for referral of information concerning real estate to brokers, or both . . . ."

Strout does not collect, or contract for, an advance fee, but it does collect a commission. The commission, however, is payable only on the actual sale of real estate and is not collected for the promotion of the sale. As I see it, what is forbidden is the act of collecting a fee, whether in advance or not, for the advertisement of real estate for sale, whether or not the real estate be sold. The use of the words "primarily to promote" confirms this interpretation, as does the use of the word "fee." A fee is not normally dependent upon the achievement of a given result, while a commission is.[3] Hence, I conclude that the officers of Strout responsible for the distribution of catalogs, confidential listings, and the like, are not acting as brokers in Montana.

---

**3.** Bouvier's Law Dictionary 547–48 (3rd Rev. 1914).

MCA § 37–51–102(2) also defines a broker as "any person who aids, attempts, or offers to aid, for a fee, any person in locating or obtaining any real estate for purchase or lease." For a share of the commission, Strout aids its brokers in locating property for purchase, but it does not charge a fee for that service. It does, if there is a sale of the property through a Strout broker, ultimately get a share of the commission for the sale, but again there is a distinction between locating or obtaining property for lease or purchase for a fee and collecting a share of the commission if and when there is an actual sale of the property.

This opinion together with the agreed facts in the pretrial order, which are hereby adopted, constitutes the findings of fact and conclusions of law.

Let judgment be entered denying plaintiff all relief on his complaint and granting Strout judgment on its counterclaim in the amount of $10,156.00, together with interest at the rate of 6 percent per annum from July 5, 1978.